## Case No. 1,645.

### In re BOOTH.

[14 N. B. R. 232; [1] 8 Chi. Leg. News, 307; 1 Cin. Law Bul. 131.]

District Court, S. D. Ohio.   April 27, 1876.

TAXATION—FUNDS HELD BY ASSIGNEE IN BANKRUPTCY.

No state can tax the funds in the hands of an assignee.

[Disapproved in Re Mitchell, Case No. 9,658.]

On the 7th day of January, 1876, the treasurer of Hamilton county, Ohio, made proof of and filed a claim in this case for taxes for the year 1875, alleged to be due to the state of Ohio from Samuel F. Cary, assignee of the bankrupt, John K. Booth. The tax bill prepared by the county auditor amounts to seven hundred and twenty-three dollars and ninety-six cents, which is claimed as the tax for the year 1875, chargeable upon moneys of the estate in the hands of the assignee, at a valuation of twenty-nine thousand one hundred and sixty-nine dollars. On the 10th of January, 1876, the assignee, acting in pursuance of the 34th general order in bankruptcy of the supreme court of the United States, filed his petition with the register, praying for an order for the re-examination of said claim, and a day was assigned for the hearing of said petition, of which due notice was given to the county treasurer; and on the 1st day of February, 1876, the county auditor, by Mr. Capellar, the tax omission clerk, and the county treasurer, by Mr. Logan, his attorney, appeared before me, Mr. Cary, the assignee, appearing in person. From the testimony produced in the cause I find established the following state of facts: Captain Booth was adjudicated a bankrupt in this court July 18, 1874. The property of which he was then possessed consisted of several steamboats and barges, a house and lot of land in Cin-

---

[1] [Reprinted from 14 N. B. R. 232, by permission.]

cinnati, and a small amount of outstanding debts due him. In October of that year the assignee, by order of this court, made sale of the boats and barges and also of the real estate, and deposited the whole proceeds to his credit, as assignee, in the First National Bank of Cincinnati, in pursuance of the order of this court, and out of this fund, by virtue of another order of court, he paid to the county treasurer all the taxes due the state of Ohio on the real and personal property of the bankrupt, as provided for by section 5101 of the Revised Statutes of the United States. Bankrupt Act, § 28. A portion of these proceeds, amounting to nineteen thousand four hundred and forty-five dollars, remained in the bank until after the annual assessment in April, 1875, and was then held by this court, subject to the termination of a complicated litigation which had arisen between various claimants, who asserted divers and conflicting liens upon the fund, which litigation was not ended so as to enable the court to distribute the fund to its various owners until November, 1875. The assignee, who resided at College Hill, in Millcreek township, in said county, but whose law office was in Cincinnati, in listing, in April, 1875, his personal property for taxation, did not include this fund or any part of it, "as it was not within the control of this petitioner, but was in the custody of this court for the purpose of distribution among the creditors of the bankrupt when the proper lien-holders were ascertained." The auditor of the county, however, ascertaining this fact, caused the fund to be listed as personal property of the assignee in Cincinnati, adding to it the penalty of fifty per centum imposed by the law of Ohio against such persons as "shall make a false return or shall evade making a return." Upon this state of facts the following questions arise: First. Is this fund so in the custody of this court, through its officer, subject to taxation under the laws of Ohio? Second. If so liable, is the assignee guilty, under the circumstances. of making a false return, or of evading making a return? Third. If the fund be taxable, shall it be listed as property in Cincinnati, or in College Hill, in Millcreek township?

The tax law of Ohio subjects to taxation among other things all moneys and credits, and it defines the terms "money" or "moneys" to mean "and include gold and silver coin and banknotes in actual possession of solvent banks, and every deposit which the person owning, holding in trust, or having the beneficial interest therein, is entitled to withdraw in money on demand." Under the revised instructions, by the auditor of state to township assessors, it is provided that "all gold and silver coin, banknotes, and deposits with banks or persons payable on demand, are moneys, and must be returned as such, whether in national banknotes or greenbacks." Is this fund, therefore, "mon-

eys payable on demand," within the meaning of the tax law and the instructions just quoted? The assignee is an officer of this court. He is required by the bankrupt act to deposit all money belonging to the bankrupt in some bank in his name, as assignee. Rev. St. U. S. § 5059; Bankrupt Act, § 17. And by General Order 28 this court is required to designate in each district a national bank "in which all moneys received by assignees or paid into court, in the course of any proceedings in bankruptcy, shall be deposited." The rule further provides "that no moneys so deposited shall be drawn from such depository, unless upon a check or warrant signed by the clerk of the court, or by an assignee, and countersigned by the judge of the court, or one of the registers designated for that purpose, stating the date, the sum, and the account for which it is drawn." Under these rules these funds were deposited by the assignee in the First National Bank of Cincinnati, where they were held by the court, and subject alone to the control of the court. The assignee could not withdraw a dollar of it except by the special order of the court. Such a fund comes neither within the letter nor spirit of the tax laws of Ohio, and is not such a fund as the assignee was required by those laws to list for taxation as a trust fund in his hands payable on demand.

The bankrupt law (Rev. St. U. S. § 5101; section 28 of the original act) provides "that all debts due to the state in which the proceedings in bankruptcy are p. . taxes and assessments made under the laws thereof," shall be entitled to priority of payment next after the costs and expenses of the bankruptcy and all debts and taxes due the United States; and that provision has been strictly complied with by this court in directing the assignee to pay all the taxes assessed upon the real and personal property of the bankrupt, and from which the fund in controversy was derived. But it is claimed by counsel for the treasurer, that inasmuch as that fund received the protection of the laws of Ohio after it came to the hands of the assignee, it, in common with all other taxable property in the state, should bear its proportion of the burden of taxation. This is true enough as a general proposition of law applicable to all property receiving the protecting care of the state government. But this is not such a case. From the moment the fund came into the possession of this court, that moment it ceased to be under the protecting care of the government of the state. It passed into the custody of a court of the United States, under and by virtue of the laws of the United States, and was therefore necessarily under the sole protection of the government of the United States. No state court and no officer of the state had control over it or any power to interfere with it. "The sovereignties of the United States and of a state are distinct and

independent of each other, within their respective spheres of action, although both exist and exercise their powers within the same territorial limits." Ableman v. Booth, 21 How. [62 U. S.] 506, per Taney, C. J. Such portions of that fund as were decreed to belong to the citizens of Ohio constituted "credits" within the meaning of the tax laws of Ohio, which those citizens were required to list for taxation in their annual returns, and it is to be presumed that those citizens performed their duty in making such returns; if not, it is not too late for the auditor to have such omissions corrected, as he has attempted to do in the case now before the court. The view I have taken of the first proposition renders it unnecessary for me to consider the two others. I shall therefore order that the claim of the treasurer filed in this cause be expunged.

F. BALL, Register, etc.

NOTE [from original report]. The question in the above case was not certified to the court, but the judge expressed his approval of the decision.